## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                    |   |                  |
|----------------------------------------------------|---|------------------|
| TIFFANY D.                                         | : |                  |
| v.                                                 | : | NO. 24-CV-5703   |
| FRANK BISIGNANO,<br>Commissioner of Social Security | : |                  |

**O P I N I O N**

SCOTT W. REID                                                      DATE:  October 31, 2025
UNITED STATES MAGISTRATE JUDGE

Tiffany D. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I recommend that Tiffany D.'s Request for Review be denied, and judgment entered in favor of the defendant.

I.      *Factual and Procedural Background*

Tiffany D. was born on March 20, 1989.  Record at 181.  She graduated from high school.  Record at 199.  She had only very brief periods of employment, so the ALJ considered her to have no past relevant work for Social Security purposes.  Record at 44.  On May 5, 2022, she filed an application for SSI, alleging disability on the basis of bipolar disorder, anxiety, post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADD"), depression, borderline personality disorder, sciatica, a heart murmur, carpal tunnel syndrome, and seizures.  Record at 41, 181, 198.  Originally, she alleged a disabled date of April 21, 2018, but she later amended it to May 5, 2022, the date of her application.  Record at 46, 181.

Tiffany D.'s application was denied initially on February 7, 2023. Record at 66. It was denied upon reconsideration on May 23, 2023. Record at 78. Tiffany D. then requested reconsideration *de novo* by an Administrative Law Judge ("ALJ"). Record at 101.

A hearing was held in this matter on October 26, 2023. Record at 38. On December 29, 2023, however, the ALJ issued a written decision denying benefits. Record at 16. The Appeals Council denied Tiffany D.'s request for review on August 26, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Tiffany D. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

> requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Tiffany D. suffered from the severe impairments of bipolar disorder, PTSD, social phobia, substance abuse, degenerative disc disease, and right-sided carpal tunnel syndrome ("CTS"). Record at 19. She determined that none of these impairments, and no combination of impairments met or medically equaled a listed impairment. Record at 20.

The ALJ determined that Tiffany D. retained the RFC to perform work at the light exertional level, with the following limitations: she could engage in only occasional postural activities, except no climbing of ladders/ropes/scaffolds; and frequent (as opposed to constant)

3

handling/fingering.  Record at 24.  She could not work around hazards; she could perform only work involving routine tasks with detailed but uninvolved instructions, which were not performed at a production rate pace.  *Id*.  She could have no contact with the public; incidental interactions with coworkers; occasional interactions with supervisors; and only occasional changes in work processes or tasks.  *Id*.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Tiffany D. could work as a price marker, router, or mail sorter.  Record at 32.  She decided, therefore, that Tiffany D. was not disabled within the period under consideration.  Record at 33.

Tiffany D., however, argues that the ALJ erred in failing to credit the opinion of Brook Crichlow, Ph.D., the independent examining mental health expert, and in only partially crediting the opinion of Monique Slade, N.P., the independent examining nurse practitioner.  She argues that, as a result of this, the ALJ failed to include all of her limitations in the RFC assessment, or in the hypothetical question presented to the vocational expert.

IV.   *Discussion*

   A.   *Dr. Crichlow*

Dr. Crichlow met with Tiffany D. on January 20, 2023.  Record at 361.  He found her to be fully oriented, with fluent speech and coherent and goal-directed thought processes, although with a labile affect and a mood that varied from tense and depressed to euthymic (i.e., tranquil).  Record at 363.  Her recent and remote memory were impaired, and her attention and concentration were mildly impaired.  *Id*.  Her insight and judgment were fair.  Record at 364.  Dr. Crichlow diagnosed Tiffany D. with an unspecified bipolar disorder, unspecified opioid disorder, and an unspecified trauma and stressor-related disorder.  *Id*.

Dr. Crichlow indicated in a check-off Medical Source form that Tiffany D. had marked limitations in her ability to interact with the public, supervisors, and coworkers, and a marked limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. Record at 367. He explained that this was a result of Tiffany D.'s depressive/manic episodes, paranoia attacks, aggression, and history of incarceration (apparently, Tiffany D. was sentenced to seven months' incarceration for trespassing/hindering the apprehension of a felon). *Id*. and Record at 363.

As above, the ALJ limited Tiffany D. to no interaction with the public, only incidental contact with coworkers, and occasional interaction with supervisors, as well as no more than occasional changes in her work processes or tasks. Record at 24. To some extent, therefore, the ALJ's assessment was aligned with Dr. Crichlow's opinions. However, the ALJ found Dr. Crichlow's opinion "unpersuasive," overall. Record at 29.

The ALJ explained at length why she found Dr. Crichlow's opinion unsupported. She pointed to internal inconsistencies in Dr. Crichlow's findings. Specifically, she noted that Dr. Crichlow's examination results showed that Tiffany D. had impaired concentration, and he indicated she would have marked impairment in responding to usual work situations and changes in a routine work setting. Record at 29, 363, 367. Yet, when asked "Are any other capabilities (such as the ability to concentrate, persist, or maintain pace and the ability to adapt and manage oneself) affected by the impairment?" he checked off "no." Record at 29, 367.

The ALJ went on to write:

> Dr. Crichlow's opinion as to marked limitations appears to be based on the claimant's self-reported history rather than objective findings. Upon examination by Dr. Crichlow, mood varied, affect showed marked lability, posture was tense, and motor behavior was restless. However, the claimant was cooperative with appropriate eye contact. Speech was fluent and clear. Expressive and receptive language abilities were adequate. Hygiene and grooming were appropriate. Thought processes were coherent and goal

5

directed. Sensorium was clear. The claimant was alert and oriented times three. Insight and judgment were fair.

Record at 29-30. This is an adequate discussion of supportability.

Crucially, the ALJ then demonstrated that Dr. Crichlow's findings of marked limitations were inconsistent with other medical evidence of record. She pointed out that notes from Tiffany D.'s psychiatrist authored in July through September, 2023, reported that her symptoms of depression had "resolved." Record at 30, 385, 388, 401. The most recent notes showed that Tiffany D. was no longer experiencing racing thoughts, although she still suffered from anxiety. Record at 385, 388. The ALJ also pointed out that primary care notes from February and March, 2023, described Tiffany D. as having a normal mood and normal behavior. Record at 39, 377, 380. The ALJ concluded: "The longitudinal evidence after the alleged onset date is consistent with no more than moderate limitation in functioning." Record at 30. (Emphasis supplied).

The ALJ also observed that Dr. Crichlow's findings were inconsistent with those reached by the agency reviewing mental health consultants:

> By contrast, the state agency psychological consultants, Drs. Paul Thomas Taren and William Francis Anzalone, opined initially in February, 2023, and on reconsideration in May, 2023, respectively, that in understanding, remembering, or applying information, the claimant had moderate limitation. In interacting with others, she had moderate limitation. With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitation. As for adapting or managing oneself, she had moderate limitation.

Record at 30. This was an accurate statement. Record at 70, 81.

Thus, the ALJ recognized that Tiffany D. suffered from significant mental illness; she found Tiffany D. to be impaired in many respects, and imposed relevant limitations in her RFC assessment. Record at 24. Nevertheless, the evidence did not compel the ALJ to conclude that Tiffany D. had the marked, work-preclusive, psychiatric limitations found by Dr. Crichlow.

6

Because the ALJ clearly explained her decision in this regard, and supported her explanation with citations to substantial evidence, there is no basis for relief here.

      B.      *N.P. Slade*

During her November 9, 2022, examination, Tiffany D. told N.P. Slade that she suffered from CTS on the right, with pain rated 10/10 from her elbow to the wrist. Record at 341. N.P. Slade also observed that Tiffany D. had "decreased hand and finger dexterity" on the right, and difficulty using her right hand to manipulate a pen, zip, and button. *Id*. She limited Tiffany D. to only occasional handling and fingering with her dominant right hand, with no sorting or use of papers or files. Record at 347.

The ALJ found N.P. Slade's report to be "partially persuasive," but she did not accept most of the limitations to Tiffany D.'s use of her right extremity, writing: "There appears to be no medical basis for limiting manipulative restrictions other than for handling/fingering … ." Record at 31. She noted that there was no evidence in the treatment records of any complaint regarding Tiffany D.'s right hand during the period at issue. *Id*. She found that Tiffany D. could handle and finger on a "frequent" (though not "constant") basis. Record at 24.

Tiffany D. argues that the ALJ erred in failing to adopt N.P. Slade's limitation to only occasional use of her right hand, and by neglecting to offer an explanation for rejecting the opinion of a medical expert. The ALJ, however, supported her decision in this regard by citing the opinion of Lorlyn G. Lange, D.O., who reviewed Tiffany D.'s records on initial review, and Lewellyn Antone Raymundo, M.D., who reviewed them on reconsideration. Record at 31. Drs. Lange and Raymundo both found that Tiffany D.'s CTS limited her to "frequent" fingering and handling. Record at 72, 84.

The ALJ was also accurate in observing that Tiffany D. did not seek treatment for CTS or any other problem with her right upper extremity during the relevant time period, as might have been expected if she suffered from 10/10 (i.e., the most severe possible) pain. The notes from her March, 2023, annual physical examination by her primary care physician do not mention CTS, or even list it among her medical conditions. Record at 379-381. Her musculoskeletal examination was negative for arthralgias, joint pain, swelling, and myalgias. Record at 379. There was no mention of difficulties of any sort with the right hand or arm.

Clearly, therefore, the ALJ supported her decision with citations to substantial evidence. She did not, as Tiffany D. argues, simply "substitute her lay opinion for the expert opinion of N.P. Slade with no explanation." *Plaintiff's Reply* at 7.

C.   *The Hypothetical Questions Posed to the Vocational Expert*

Finally, Tiffany D. argues that the vocational expert's response to the hypothetical question posed to her by the ALJ did not constitute substantial evidence upon which the ALJ could rely, because the questions did not include the limitations discussed above assessed by Dr. Crichton and N.P. Slade. A hypothetical question posed to a vocational expert must reflect all of a claimant's credibly established impairments. *Rutherford v. Barnhart*, 300 F.3d 546, 554 (3d Cir. 2005).

Here, however, the ALJ did not find those limitations to be credibly established. As discussed above, her decision in this regard was supported by substantial evidence. For this reason, the ALJ was not required to include those limitations in her hypothetical question to the vocational expert.

V.    *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE